# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Joseph Mizzoni, | Case No.: 2:17-cv-01482-JAD-NJK |
| Plaintiff | **Order Granting the Defendants' Motion for Summary Judgment, Denying the Plaintiff's Motion for Summary Judgment, and Closing Case** |
| v. | |
| Romeo Aranas, et al., | |
| Defendants | [ECF Nos. 21, 30] |

Pro se plaintiff and former Nevada state prisoner Joseph Mizzoni brings this civil-rights action against Nevada Department of Corrections administrators and doctors, claiming that the care he received for his hepatitis C constituted deliberate indifference to his serious medical needs.[1] The defendants move for summary judgment, arguing that they are entitled to qualified immunity.[2] Mizzoni opposes their motion and moves for summary judgment on the merits of his claim.[3] Because Mizzoni doesn't show that his asserted right was clearly established at the time of the alleged deliberate indifference, he fails to overcome the defendants' qualified-immunity claim. So, I grant the defendants' motion, deny Mizzoni's, and close this case.

## Background

Mizzoni received his hepatitis C diagnosis in 2010 while housed at Ely State Prison (ESP).[4] After his transfer to High Desert State Prison (HDSP) in 2015, Mizzoni was seen by Dr. Gregory Bryan, a senior physician at HDSP.[5] When Mizzoni complained of abdominal pain and

---

[1] ECF No. 3.
[2] ECF No. 21.
[3] ECF Nos. 29, 30.
[4] ECF Nos. 1 at 2, 21-1 at 3.
[5] ECF No. 21-1 at 3.

told Dr. Bryan about his diagnosis, Dr. Bryan ordered bloodwork, which showed no inflammation of Mizzoni's liver and didn't indicate that Mizzoni's various medical complaints were related to hepatitis C.[6]

Hepatitis C is a viral disease of the liver that can, over time, lead to cirrhosis, liver failure, and death.[7] This progression is usually slow. Because treating hepatitis C is expensive and could sacrifice medically necessary care for other inmates, the Nevada Department of Corrections (NDOC) prioritizes Direct Acting Antiviral agent treatment based on NDOC Medical Directive 219.[8] That policy directs treatment of hepatitis C and excludes certain infected patients from treatment, including those with an "APRI score" of less than 2 (or 1.5 if the prisoner-patient shows signs of advanced fibrosis or cirrhosis).[9] An APRI score is based on the Aspartate Aminotranferase to Platelet Ratio Index, a formula used to predict severe fibrosis or cirrhosis with blood test results.[10]

When a prisoner has a chronic illness like hepatitis C, he is eligible for NDOC's chronic-disease management clinic, which provides regular monitoring, assessment, and treatment of chronic illnesses.[11] The day that Mizzoni mentioned his diagnosis to Dr. Bryan, Dr. Bryan enrolled Mizzoni in that clinic.[12] As a result, Mizzoni had his blood tested several times to monitor his APRI score and met with Drs. Bryan and Martin Naughton to discuss his

---

[6] *Id.*
[7] *Id.*
[8] *Id.*; ECF No. 21-3.
[9] ECF No. 21-3 at 6.
[10] *Id.*
[11] ECF No. 21-11.
[12] ECF No. 21-12.

2

condition.[13] At no time during his incarceration at HDSP did Mizzoni's APRI scores rise to the level that would qualify him for treatment under Medical Directive 219.[14]

Mizzoni sues Dr. Bryan, NDOC Medical Director Aranas, and NDOC Director Dzurenda (whom he alleges is the final decisionmaker for hepatitis treatment) asserting a single, deliberate-indifference-to-serious-medical-needs claim under 42 U.S.C. § 1983.[15] Mizzoni theorizes that he was forced to suffer with hepatitis C until his release in 2019 "for no reason medically, just cost . . . ."[16]

## Discussion

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[18] If reasonable minds could differ on material facts, summary judgment is not appropriate and the case must proceed to trial.[19]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

---

[13] ECF Nos. 13, 14.
[14] ECF No. 21-1 at 3–4.
[15] ECF No. 2 (screening order).
[16] ECF No. 29 at 5.
[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[18] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[19] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

3

facts showing that there is a genuine issue for trial."[20]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[21]

### B. The defendants are entitled to qualified immunity for Mizzoni's deliberate-indifference claim.

"Qualified immunity protects government officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[22]  "To determine whether an officer is entitled to qualified immunity," the court asks, in the order it chooses, "(1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct."[23]  "A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[24]

The plaintiff bears the burden of showing the rights at issue were clearly established at the time of the defendant's actions.[25]  The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[26]  I make this second inquiry "in light of the specific context of the case, not as a broad

---

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[21] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[22] *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[23] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[24] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted).

[25] *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

[26] *Id.*

general proposition."[27] The Supreme Court of the United States has cautioned lower courts to avoid addressing qualified immunity at a high level of generality.[28] Courts must consider the specific facts of the case and determine whether an official would know his or her actions violated clearly established law in those particular circumstances.[29] A defendant will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable.[30] The defendants argue that they are entitled to qualified immunity because they reasonably believed that monitoring Mizzoni's condition under the NDOC's treatment plan was lawful. They contend that Mizzoni cannot show that he had a clearly established right to treatment outside of what he received.

It is Mizzoni's burden to show that the right he claims the defendants violated was clearly established at the time of the alleged misconduct. Mizzoni doesn't dispute that he was enrolled in the chronic-disease management protocol and that his condition was monitored and assessed like any other prisoner-patient enrolled in that program. While he argues that, generally, he has a right to treatment, he fails to define the right at issue in this case with sufficient particularity. Mizzoni is asserting a right not just to treatment, but to the most thorough care available to treat his chronic illness. But he doesn't point to any case law that shows that he has a clearly defined right to more treatment than he received under NDOC's protocols. Mizzoni has therefore failed

---

[27] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[28] *Id.*; *see also Sheehan v. Cty. Of San Francisco*, 135 S. Ct. 1765, 1775–76 (2015); *Kisella v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018).

[29] *City of Escondido v. Emmons*, 586 U.S. ___, 139 S.Ct. 500 (2019) (per curiam) (slip op. at 5).

[30] *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003).

5

to show a genuine dispute of material fact about whether the defendants are entitled to qualified immunity.[31] So, I grant the defendants' motion for summary judgment and deny Mizzoni's.

**Conclusion**

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the defendants' motion for summary judgment **[ECF No. 21] is GRANTED** and Mizzoni's motion for summary judgment **[ECF No. 30] is DENIED.**

And with good cause appearing and no reason to delay, IT IS FURTHER ORDERED that the **Clerk of Court** is directed to **ENTER FINAL JUDGMENT** in favor of the defendants and against Mizzoni and **CLOSE THIS CASE**.

Dated: July 9, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[31] Mizzoni devotes considerable time in his response to an argument based on the Equal Protection Clause in the Fourteenth Amendment. But he has no equal-protection claim in this case, nor has he moved to add one. His complaint asserted a single cause of action for deliberate indifference to serious medical needs in violation of the Eighth Amendment. I therefore do not consider the new theory of liability that Mizzoni raises in his summary-judgment briefing.

6